# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

SHARRON D. SIMS )
)
v. ) No. 3:13-1306
)
CAROLYN W. COLVIN, )
    Acting Commissioner of )
    Social Security )

To: The Honorable Kevin H. Sharp, Chief District Judge


## R E P O R T   A N D   R E C O M M E N D A T I O N

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") that denied Plaintiff's claim for

a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income

("SSI"), as provided by the Social Security Act ("the Act"). The case is currently pending on

Plaintiff's motion for judgment on the pleadings (Docket Entry No. 12), to which Defendant has filed

a response (Docket Entry No. 14).

Upon review of the administrative record as a whole and consideration of the parties' filings,

the Court recommends that Plaintiff's motion for judgment on the administrative record (Docket

Entry No. 12) be GRANTED, the decision of the Commissioner be reversed, and this matter be

remanded for further administrative proceedings consistent with this Report.

# I.  INTRODUCTION

Plaintiff protectively filed for a period of disability, DIB, and SSI on November 17, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 10),[1] at 16, 71-72.  She alleged a disability onset date of June 30, 2009, although she later amended this date to November 1, 2010. AR 16, 18, 71-72.  Plaintiff asserted that she was unable to work because of type II diabetes, fainting spells, bipolar disorder, depression, and post traumatic stress disorder ("PTSD").[2] AR 79-80.

Plaintiff's applications were denied initially and upon reconsideration.  AR 71-74.  After submitting a request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Elizabeth P. Neuhoff on July 19, 2012.  AR 41. On August 3, 2012, the ALJ issued a decision unfavorable to Plaintiff.  AR 13-15.  On October 18, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).

# II.  THE ALJ FINDINGS

The ALJ issued an unfavorable decision on August 3, 2012.  AR 13-15.  Based upon the record, the ALJ made the following enumerated findings:

1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[2] Medical records also indicated that Plaintiff suffered from gastritis.  AR 79-80.

2.    The claimant has not engaged in substantial gainful activity since November 1, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: diabetes mellitus; gastritis; syncope; and mild right acromioclavicular joint osteoarthritis (20 CFR 404.1520(c) and 416.920(c)).

***

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk 6 hours total each; no overhead work with the right upper extremity; and no work around hazards. The claimant is able to perform unskilled work consisting of simple tasks and instructions; occasional contact with public; work-only related contact with co-workers and supervisors; and occasional change in the workplace.

***

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

***

7.    The claimant was born on August 20, 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a marginal (6th grade) education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional and national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

\*\*\*

11. The claimant has not been under a "disability" as defined in the Social Security Act, from November 1, 2010 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 18-26.

# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence contained in the administrative record. The Court will therefore discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, *Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" includes not only previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education, or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment, or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results

in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relation to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert.*

*denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances).  Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further.  20 C.F.R. § 404.1520(a)(4).  *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).


## C.  The ALJ's Five-Step Evaluation of Plaintiff

The ALJ in this case resolved Plaintiff's claim at step five of the five-step process.  The ALJ found that Plaintiff met the first two steps (AR 18-19), but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 21.  At step four, the ALJ found that Plaintiff's impairments rendered her unable to perform any past relevant work (AR 24-25), thus triggering the fifth step of the inquiry.  At step five, the ALJ found that Plaintiff's RFC allowed her to perform light work with certain limitations as set out in the ALJ's findings, (AR 21-24), and that, considering her age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  AR 25-26.

**D.  Plaintiff's Assertion of Error**

Plaintiff's contends that the ALJ erred by finding that she does not suffer from any severe mental impairments despite "overwhelming" evidence that she suffers from mental impairments, in violation of SSR 96-3, SSR 96-3p, and relevant case law.  DE 13 at 4-10.  Plaintiff argues that the Commissioner's decision should therefore be reversed and benefits awarded, or, in the alternative, remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).  "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).  Plaintiff's argument is addressed below.

**Whether the ALJ erred in finding that Plaintiff does not suffer from any severe mental impairments.**

Plaintiff's lone assertion of error contends that the ALJ improperly determined that Plaintiff does not suffer from any severe mental impairments. DE 13 at 7. Plaintiff cites SSR 96-3p, which states that an impairment is "considered 'not severe' if it is a slight abnormality(ies) that causes no more that minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." 1996 WL 374181, at * 1. Plaintiff relies on three medical source statements completed by mental health providers that she alleges support a finding of mental disability, and notes that the ALJ's opinion is devoid of any discussion regarding Plaintiff's treatment with Dr. Jana Williams, her treating psychiatrist. DE 13 at 7, 9.

Plaintiff also claims that the ALJ failed to "follow the proper sequential evaluation" in the assessment of her mental impairments (*Id*. at 9), although there is no development of this argument in her brief. Plaintiff cites the Sixth Circuit's holding that step two of the sequential evaluation process consists of a *de minimis* standard that allows the Commissioner to "screen out totally groundless claims." *Farris*, 773 F.2d at 89. However, as noted by Defendant, the ALJ determined that Plaintiff suffered from multiple severe impairments, including diabetes mellitus, gastritis, syncope, and mild right acromioclavicular joint osteoarthritis. AR 19. Because the ALJ determined that Plaintiff suffered from these severe impairments, she continued to the next step of the sequential evaluation. The ALJ proceeded to consider both the severe and nonsevere impairments in her subsequent analysis, including those related to mental health, as evident by the fact that she incorporated multiple mental limitations into the assigned RFC. AR 21. It therefore became "legally

irrelevant" that her mental impairments were determined to be not severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal citation omitted).

Plaintiff next argues that the ALJ improperly rejected evidence of the severity of Plaintiff's mental impairments by relying on malingering tests which are no longer permitted by the Commissioner. *Id.* at 7-9. The Court finds this argument to be unpersuasive. Defendant concedes that the malingering tests in question, which were performed by Leah Hawkins, M.A., and Dr. Kathryn Sherrod, Ph.D.,[3] "cannot prove malingering because no test conclusively determines inaccurate self-reporting," but notes that the ALJ did not rely on the actual test results because they produced mixed results. DE 14 at 14; AR 348. The Court notes that although the ALJ referenced the conclusion of Ms. Hawkins and Dr. Sherrod that Plaintiff was "malingering," the ALJ's discussion primarily focused on the numerous inconsistencies in Plaintiff's statements to the examiners, including those pertaining to her ability to drive and her claim that she stayed in bed for 24 hours per day. AR 20.

Regardless, there is ample evidence cited in the opinion to otherwise support the ALJ's determination that Plaintiff's testimony about the severity of her symptoms was less than credible. The ALJ noted that Plaintiff's condition showed improvement with medication "when taken as prescribed on a consistent basis." AR 24. This is significant, as Plaintiff has demonstrated inconsistent adherence to her medication regimen (AR 62-63, 281, 291-92, 534, 537), which weighs against Plaintiff's credibility. *See Meece v. Barnhart*, 192 F. App'x 456, 464 (6th Cir. 2006) (noting that a claimant's failure to use prescription medication may undermine her complaints); *Ranellucci*

---

[3] These tests are identified as the MMPI-2 Lie and Frequency Scales, Bender Gestalt Test, 15-Item Test, and Structured Inventory of malingered Symptomatology. DE 13 at 8; AR 348.

*v. Astrue*, No. 3:11-cv-0640, 2012 WL 4484922, at *11 (M.D. Tenn. Sept. 27, 2012) ("The Court further notes that ALJ Roberts could properly use Plaintiff's non-compliance with treatment as a factor in analyzing Plaintiff's credibility.").

The ALJ also discussed Dr. Clarke Holmes's opinion that Plaintiff's complaints of shoulder pain were "out of proportion" with findings from objective diagnostic tests. AR 22; 399. The ALJ referenced records indicating that Plaintiff was "doctor shopping" to obtain additional pain medication from multiple treating physicians, and even had her teenage daughter call the pharmacy to have prescriptions filled. AR 22, 501-02, 508. This further supports the ALJ's determination as to Plaintiff's credibility. *See Logan v. Astrue*, No. 09-174, 2010 WL 625228, at *6 (E.D. Ky. Feb. 18, 2010) ("[D]octor shopping ... reflect[s] poorly on the plaintiff's credibility[.]") (internal quotations omitted); *Crunk v. Colvin*, No. 1:13-cv-1829, 2014 WL 2592523, at *18 (N.D. Ohio June 10, 2014) ("[T]he ALJ's recognition that Plaintiff had ... engaged in 'doctor shopping' on more than one occasion is also a proper basis for finding her to be less than fully credible."). In light of this evidence, the Court finds that the ALJ's reference to impermissible malingering tests represents harmless error.

Plaintiff additionally contends that the ALJ failed to properly consider "overwhelming" evidence of Plaintiff's mental impairment. DE 13 at 4. As previously discussed, Plaintiff submitted three separate medical source statements from mental health providers with whom she treated, including Dr. Williams, a psychiatrist, Ms. Freed, a counselor, and Leigh Urbanavage, a psychiatric mental health nurse practitioner ("PMHNP"). Plaintiff notes that Ms. Freed diagnosed Plaintiff with PTSD that "makes daily functioning almost impossible." AR 387. Plaintiff also points to Ms. Urbanavage's indication that Plaintiff has "poor" (meaning "[a]bility in this area is usually

precluded") marks in the following areas: abilities of concentration, persistence, and pace; adaptability to stressful circumstances in work-like settings; ability to relate predictably in social situations; and ability to deal with the public.[4] AR 547-48.

Despite these opinions, the Court notes that neither Ms. Freed nor Ms. Urbanavage provide material support for their conclusions. When prompted to describe the medical and clinical findings that support her assessment, Ms. Freed stated only that she had treated with Plaintiff sporadically for several months because frequently no one was available to drive her to the appointments. AR 389. She also claimed that Plaintiff was often "immobile" and was unable to leave her home. AR 387. However, Plaintiff testified that she had a valid driver's license and was able to drive regularly. AR 51. Ms. Freed's additional claim that daily functioning is "almost impossible" is further undermined by Plaintiff's stated ability to care for both her daughter and her niece, attend church regularly, shop, and patronize salons to receive hair and nail treatment. AR 23, 53-54, 206, 347. While such activities do not demonstrate Plaintiff's ability to perform work on a sustained basis, they contradict Ms. Freed's finding that Plaintiff is essentially unable to leave her home.

Ms. Urbanavage was similarly asked to describe the medical and clinical findings that support her opinion that Plaintiff suffered from numerous functional deficiencies, to which she stated only: "[history] of psychosis." AR 548. While this may represent an accurate assessment of Plaintiff's condition, neither she nor Plaintiff identifies any medical evidence in the record that supports the severe limitations imposed in her medical source statement. This lack of support thus makes Ms. Urbanavage's opinion little more than a conclusory statement. *See Walters v. Comm'r*

---

[4] Ms. Urbanavage additionally found that Plaintiff's ability to deal with the stress of ordinary work ranged from "fair" to "poor." AR 548.

*of Soc. Sec.*, No. 1:14-cv-481, 2015 WL 1851451, at *10 (S.D. Ohio Apr. 22, 2015), *report and recommendation adopted*, 2015 WL 5693640 (S.D. Ohio Sept. 29, 2015) (finding that the ALJ reasonably rejected "other source" evidence which was "conclusory, neither well-explained nor supported by any objective findings, and an opinion on an issue reserved to the Commissioner"). While SSR 06-03p notes that an ALJ should generally explain the weight given to "other sources" such as Ms. Freed and Ms. Urbanavage, these sources are not entitled to any special deference and their opinions must be supported by the objective record. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). Plaintiff cites no evidence indicating that these opinions find such support in the record.

However, the crux of Plaintiff's argument is that the ALJ committed reversible error by failing to provide good reasons for discounting the opinion of her treating psychiatrist, Dr. Williams. Plaintiff faults the ALJ for not providing any discussion of the records documenting her treatment with Dr. Williams (DE 13 at 9), although she fails to explain how such records contradict the ALJ's conclusion that Plaintiff does not suffer from a severe mental impairment. This is likely due to the fact that the handwritten notes from Dr. Williams, which appear to document eight visits between November of 2010 and April of 2011, are mostly illegible. AR 376-81. Notwithstanding this quandary, the ALJ cited Dr. Williams' opinion that Plaintiff was unable to work due to several functional deficiencies, including a "poor" mark in the following areas: capacity to interact appropriately, communicate effectively, and engage in other aspects of social functioning; ability to understand, remember, and carry out complex instructions; ability to understand, remember, and carry out detailed, but not complex instructions; ability to behave in an emotionally stable manner; ability to relate predictably in social situations; ability to deal with the public; ability to deal with the

14

stress of ordinary work; ability to relate to supervisors and coworkers; and ability to use judgment.

AR 19; 384-85. Dr. Williams further found that Plaintiff had no ability to adapt to stressful

circumstances in work-like settings. AR 384.

> In support of her conclusions, Dr. Williams stated the following:

> [Plaintiff] is very unstable and has been for years. She's had minimal response to medications. She's also in therapy but this will take years to overcome. [Plaintiff] is socially [withdrawn] and demonstrates inadequate and inappropriate responses to others. Misreads others' intentions [and is] easily irritated by others.

AR 385.

> In according "little weight" to this opinion, as well as the opinions provided by Ms. Freed

and Ms. Urbanavage, the ALJ stated the following:

> These opinions are inconsistent with the evidence and the record as a whole. The claimant admitted she cared for her daughter in her home for three months and was a caretaker for her granddaughter and niece. She stated she went to have to [sic] her hair and nails done. She reported hurting her back after rearranging furniture on June 23, 2010. She stated she drove, although she did not have [a] valid driver's license, attended church two times per month, and shopped occasionally. The records also reflected the claimant had no problems communicating effectively with Social Security personnel, medical providers, and mental health providers. Further, the mental health records documented the claimant missed many appointments, which tended to suggest her symptoms were not quite as limiting as alleged.

AR 19-20.

> The ALJ is correct in noting that Plaintiff missed or cancelled numerous appointments with

her medical providers. AR 287, 295, 532, 539, 540. Additionally, although Dr. Williams stated that

Plaintiff has had "minimal response" to her prescribed medication, the ALJ noted that Plaintiff

received positive results when she was compliant with her medication regimen. AR 23-24. The

Court also notes that Plaintiff has a substantial history of noncompliance with her prescribed

medication. AR 281, 291-92, 317, 534, 537. Nevertheless, the Court finds that this case should be

remanded for further consideration in light of the ALJ's failure to explain the weight given to the treating source's opinion. The ALJ accorded "little weight" to the medical source statement completed by Dr. Williams by claiming that this opinion was "inconsistent with the evidence and the record as a whole." AR 19-20. However, the ALJ then delineated several mental limitations in the assigned RFC, including significant restrictions pertaining to contact with the public, contact with coworkers and supervisors, and adaptability to changes in the workplace, and additionally limited Plaintiff to simple tasks and instructions. AR 21. None of the mental health professionals whose opinions were accorded significant weight by the ALJ recommended any such limitations. Indeed, Ms. Hawkins, whose opinion was given "great weight," opined that Plaintiff's social skills, knowledge of adaptive skills, and ability to sustain concentration were all within normal limits. AR 350. Dr. Frank Kupstas, whose opinion was given "significant weight," determined that Plaintiff had only mild limitations with respect to social functioning and ability to maintain concentration, persistence, and pace. AR 362. Dr. Jeffrey Wright, whose opinion was similarly given "significant weight," simply affirmed Dr. Kupstas' assessment. AR 391.

Additionally, the ALJ failed to even acknowledge the notes documenting Plaintiff's treatment with Dr. Williams, which spanned at least eight visits. AR 376-81. As previously discussed, this is likely because the treatment notes from Dr. Williams are mostly illegible. However, under SSR 96-5p, this is precisely the type of situation that necessitates recontacting of the treating source: "if the evidence does not support a treating source's opinion ... and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to

recontact the source for clarification of the reasons for the opinion." 1996 WL 374183, at *6.[5] The

ALJ explicitly indicated that Dr. Williams' opinion was not supported by the evidence of record, but

was undoubtedly incapable of ascertaining the basis of the opinion due to the illegible notes. This

dilemma could have been rectified by obtaining supplemental information from Dr. Williams

regarding the basis of her opinion.

Defendant correctly notes that the ALJ did not completely reject the opinion of Dr. Williams,

but in fact included several accommodations for Plaintiff's mental limitations in the RFC. DE 14

at 11; AR 21. However, the ALJ's failure to recontact Dr. Williams is consequential specifically

because of her incorporation of mental limitations into the RFC. The inclusion of mental limitations

in the RFC indicates that the ALJ credited the mental restrictions contained in Dr. Williams' opinion

to some extent, thus necessitating clarification of her treatment notes to obtain the basis of her

opinion. *Cf. Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157, n.3 (6th Cir. 2009) ("[A]n ALJ is

required to re-contact a treating physician only when the information received is inadequate to reach

a determination on claimant's disability status, not where, as here, *the ALJ rejects the limitations*

*recommended by that physician*.") (emphasis added).

Alternatively, it is possible that the ALJ instead relied on the mental limitations

recommended by Ms. Freed and/or Ms. Urbanavage to some extent. Regardless, the Court is unable

to ascertain the basis for the mental limitations included in the RFC, as the ALJ failed to adequately

---

[5] Social Security Rulings do not "have the force and effect of law," but are "binding on all components of the Social Security Administration" and represent "precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272, n.1 (6th Cir. 2010) (citing 20 C.F.R. § 402.35(b)(1)). Like the Sixth Circuit, the Court assumes that the Social Security Rulings are binding in the same way as Social Security Regulations. *See id.*

explain the weight that was assigned to the medical source statement completed by Dr. Williams, and instead stated solely that "[t]he opinions of Dr. Williams, Ms. Freed, and Nurse Urbanavage have been considered and are accorded little weight in this decision." AR 19. There is no distinction between the opinion of Dr. Williams, a treating source, and the opinions of Ms. Freed and Ms. Urbanavage, who are considered "other sources" for purposes of determining disability. As such, the ALJ failed to "comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004)). This requirement exists so that claimants "are able to understand how their case was decided and ensure that the ALJ applied the treating physician rule." *Peacock v. Astrue*, No. 2:05-cv-0076, 2009 WL 3615011, at *15 (M.D. Tenn. Nov. 2, 2009) (citing *Wilson*, 378 F.3d at 544-45) (internal quotations omitted). The ALJ's failure to specify the basis for the mental limitations included in the RFC "gives rise to a level of confusion that is avoidable" when the "good reasons" requirement of 20 C.F.R. §§ 404.1527 and 416.927 is properly applied. *Id*.

The ALJ's opinion is further undermined by her failure to acknowledge the records documenting Plaintiff's treatment with Pamela Hays at Centerstone Mental Health ("Centerstone"). The ALJ based her decision to give "little weight" to the opinions of Dr. Williams, Ms. Freed, and Ms. Urbanavage in part because of Plaintiff's failure to attend several of her mental health appointments. AR 20. The Centerstone records, however, indicate a variety of explanations for Plaintiff's inconsistent attendance, including lack of transportation, "billing issues" (i.e. affordability), and "multiple [f]amily crises," one of which involved preoccupation with the debilitating injuries sustained by her daughter following a severe motor vehicle accident. AR 524,

529, 532, 539. The ALJ is permitted to consider a claimant's lack of regular attendance in determining the severity of the alleged condition. However, before drawing a negative inference from a claimant's failure to pursue regular medical treatment, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits[.]" *Dooley v. Comm'r of Soc. Sec.*, –F. App'x–, No. 16-5146, 2016 WL 4046777, at *5 (6th Cir. July 28, 2016) (internal citation omitted).

Similarly, the Centerstone records contradict the ALJ's statement that Plaintiff's mental health records indicate that she "had no problems communicating effectively with ... mental health providers." AR 20. Indeed, the Centerstone notes demonstrate that Plaintiff struggled to communicate her issues to her provider: "[Plaintiff] ... was guarded and difficult to interview ... it was explained to her, given the length of time[] she has been enrolled in [treatment], she should be more forthcoming about her personal issues, status, and problems." AR 534. Plaintiff was also encouraged to "communicate with respective [p]roviders and [c]linic staff," and Ms. Hays noted that Plaintiff is "obviously still uncomfortable with level of problem symptoms." AR 534. Plaintiff also exhibited anxiety during a subsequent session at Centerstone (AR 529), thus indicating that she experienced at least some difficulty in communicating with her mental health providers. While the ALJ is not required to discuss every piece of evidence in the record, she "may not ignore ... evidence that is contrary to the ruling." *Craig v. Colvin*, No. 3:12-cv-0333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (quoting *McCombs v. Barnhart*, 106 F. App'x 480, 484 (7th Cir. 2004)).

Based on the foregoing, the Court finds that the ALJ's decision was not supported by substantial evidence. Dr. Williams was a treating physician who opined that Plaintiff was unable to work due to severe limitations caused by her mental impairments. The notes documenting

Plaintiff's treatment with Dr. Williams are almost entirely illegible, which, pursuant to SSR 96-5p, should have prompted the ALJ to recontact Dr. Williams to obtain additional information regarding her opinion of Plaintiff's condition. *Cf. Rogers v. Astrue*, No. 3:10-cv-314, 2011 WL 4479524, at *3 (E.D. Tenn. Sept. 26, 2011) (finding that the ALJ satisfied the "recontacting" requirement by obtaining a supplemental evaluation from claimant's treating psychiatrist after noting that some of the treating psychiatrist's office notes were illegible). In conjunction with the ALJ's failure to adequately explain the weight assigned to the treating physician's opinion, as well as the ALJ's disregard of evidence in the Centerstone records that contradicts the stated reasons for discounting the treating physician's opinion, the Court finds that the ALJ's failure to obtain additional information regarding the basis of Dr. Williams' opinion warrants remand of this case. *See Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) ("[T]he ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight."); *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 751 (6th Cir. 2011) ("Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much weight to give it.") (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010)). Accordingly, the Court finds that on remand, the ALJ should comprehensively discuss the weight given to Dr. Williams' opinion and, if necessary, contact Dr. Williams to obtain supplemental information regarding the basis of her medical opinion.

## V.  RECOMMENDATION

For the above stated reasons it is recommended that Plaintiff's motion for judgment on the pleadings (DE 12) be GRANTED and that this case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration of Plaintiff's claims in accordance with this Report and Recommendation.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

BARBARA D. HOLMES
United States Magistrate Judge